Filed 6/1/22  P. v. Smith CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>BELMON CHARLES SMITH,<br><br>    Defendant and Appellant. | G060159<br><br>(Super. Ct. No. 20CF2620)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Andre Manssourian, Judge.  Affirmed.

Marilee Marshall, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Felicity Senoski, Deputy Attorneys General, for Plaintiff and Respondent.

Belmon Charles Smith challenges his convictions for attempted pimping and attempted pandering. He asserts the trial court denied him his right to a fair trial by failing to discharge a Spanish speaking juror who looked up the dictionary definitions of pimping and pandering during deliberations. We find no error and affirm the judgment.

FACTS

I. *Underlying Case*

An information alleged Smith engaged in pimping in violation of Penal Code section 266h, subdivision (a) (count 1).[1] It further alleged Smith engaged in pandering and procured prostitution in violation of section 266i, subdivision (a) (count 2). Finally, the information asserted Smith committed identity theft in violation of section 530.5 subdivision (c), subsection (2) and section 530.55, subdivision (b) (count 3).

Smith pleaded guilty to count 3 prior to trial. After trial, the jury found Smith not guilty on counts 1 and 2 but guilty of the lesser included offenses of attempted pimping and attempted pandering.

II. *Juror Misconduct*

At the end of voir dire, the trial court asked if there were any potential jurors who were not proficient in English. Juror No. 122, along with several others, responded in the affirmative. The court asked those jurors to stay to speak with them privately. Juror 122 stated he had lived in this country for 30 years and spoke English, "but not so well." When questioned if he understood everything the judge said, he replied he understood about 80 to 90 percent. When asked what he did not understand about the proceedings, the juror offered no specific examples and instead reiterated he understood several specific parts of the proceedings. The court determined his English adequate, and neither of the parties requested his discharge.

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

The court initially instructed the jury pursuant to CALCRIM No. 101, which provided in pertinent part, "Do not use the Internet or a dictionary in any way in connection with this case, either on your own or as a group." Prior to the start of deliberations, the court instructed the jury with CALCRIM No. 3550, "[i]t is very important that you not use the Internet or a dictionary in any way. . . ."

After the jury began deliberating, the court stated that it had come to the court's attention that Juror No. 122 had not understood everything during deliberations and had been assisted by Juror No. 143.

The jurors were brought in separately for questioning. Juror No. 143 indicated during deliberations Juror No. 122 stated he did not understand the words "pimping" and "pandering." Juror No. 143 told Juror No. 122 she spoke Spanish and did not mind interpreting the words. She was not sure she would explain them correctly but would break it down for him. The court admonished Juror No. 143 not to have any more conversations that were not in English.

The court then questioned Juror No. 122. He admitted having a short conversation in Spanish with Juror No. 143 because he was confused about the words pimping and pandering and he did not know the definition. Juror No. 122 volunteered he looked up the definitions on his phone and that he felt better about it. He admitted the court instructed the jury not to use the Internet or a dictionary. He was sorry for disobeying the court's order, but stated he wanted to understand what he was doing in order to be fair to Smith. Juror No. 122 stated he looked up the term "pimping" on Google in English and Google translated it into Spanish the day before. He did not share the definition with anyone.

The court denied the request to excuse Juror No. 122. It concluded Juror No. 122 committed misconduct, which created a presumption of prejudice. The court went on to determine, however, the presumption of prejudice had been rebutted because the misconduct could be cured. Ultimately, the court concluded Juror No. 122 could put

3

the definition aside, if properly admonished, and return to the definitions provided in the instructions.

The court then admonished Juror No. 122, telling him he would remain as a juror but he could not look anything else up and had to forget what he had read on his cell phone the previous evening. The court also admonished him not to share his research with the other jurors.

Juror No. 143 was also brought in ahead of the other jurors, thanked for bringing the matter to the court's attention, and was told not to share what occurred with any other jurors. The court instructed both jurors not to have any conversations that were not in the English language.

DISCUSSION

Smith asserts the trial court's failure to discharge Juror No. 122 deprived him of his right to a fair trial. We disagree. We find no error and affirm the judgment of conviction.

I. *Underlying Law and Standard of Review*

"An accused has a constitutional right to a trial by an impartial jury. [Citations.] An impartial jury is one in which no member has been improperly influenced [citations] and every member is '"capable and willing to decide the case solely on the evidence before it"' [Citations]." (*In re Hamilton* (1999) 20 Cal.4th 273, 293-294.) A court may order a juror discharged "at any time, whether before or after the final submission of the case to the jury" where good cause shows the juror unable to perform his or her duty. (§ 1089.)

"'The decision whether to investigate the possibility of juror bias, incompetence, or misconduct—like the ultimate decision to retain or discharge a juror—rests within the sound discretion of the trial court. [Citation.] The court does not abuse its discretion simply because it fails to investigate any and all new information obtained about a juror during trial.' [Citation.]" (*People v. Virgil* (2011) 51 Cal.4th 1210, 1284.)

4

Insufficient command of English to allow a full understanding of the instructions and participation in deliberations can constitute good cause to dismiss a juror. (*People v. Lomax* (2010) 49 Cal.4th 530, 566.) The inability to comprehend the proceedings, however, must appear as a demonstrable reality in the record. (*Ibid.*) Mere language difficulty is insufficient. (*Ibid.*)

Use of a dictionary by a juror constitutes misconduct. (*People v. Karis* (1988) 46 Cal.3d 612, 642.) "Jurors are not allowed to obtain information from outside sources either as to factual matters or for guidance on the law." (*Ibid.*) Juror misconduct involving the receipt of extraneous information not part of the evidence at trial creates a presumption the defendant was prejudiced by the evidence and may establish juror bias. (*People v. Nesler* (1997) 16 Cal.4th 561, 578 (*Nesler*).) However, the verdict will be set aside only if there appears a substantial likelihood of juror bias. (*Id.* at pp. 578-579.)

Juror "bias may appear in either of two ways: (1) if the extraneous material, judged objectively, is so prejudicial in and of itself that it is inherently and substantially likely to have influenced a juror; or (2) even if the information is not 'inherently' prejudicial, if, from the nature of the misconduct and the surrounding circumstances, the court determines that it is substantially likely a juror was 'actually biased' against the defendant." (*Nesler, supra,* 16 Cal.4th at pp. 578-579.)

Juror misconduct gives rise to a presumption of prejudice, which is rebuttable by demonstrating that "there is no substantial likelihood that any juror was improperly influenced to the defendant's detriment." (*People v. Clair* (1992) 2 Cal.4th 629, 668.) This "inherent prejudice" test is analogous to the general standard for harmless error analysis under California law." (*In re Carpenter* (1995) 9 Cal.4th 634, 653.) "Under this standard, a finding of 'inherently' likely bias is required when, but only when, the extraneous information was so prejudicial in context that its erroneous introduction in the trial itself would have warranted reversal of the judgment. Application of this 'inherent prejudice' test obviously depends upon a review of the trial

5

record to determine the prejudicial effect of the extraneous information." (*Ibid.*)

Whether the presumption of prejudice from juror misconduct was rebutted is a mixed question of law and fact subject to our independent determination. (*Nesler, supra*, 16 Cal.4th at p. 582.) We defer to credibility determinations made by the trial court, as well as its factual findings if supported by substantial evidence. (*Ibid.*)

II. *Analysis*

Smith asserts the trial court erroneously failed to discharge Juror No. 122 for misconduct. He makes two arguments in support of his contention. First, Juror No. 122 was not capable of serving on the jury because he did not possess "sufficient knowledge of the English language." (Code Civ. Proc., § 203, subd. (a)(6).) Second, Juror No. 122's use of a dictionary amounted to inherent prejudice that could not be rebutted by the prosecution. Neither contention has merit.

A. *English Language Proficiency*

Smith argues the trial court erred when it failed to discharge Juror No. 122 based on a purported lack of English language proficiency. The defense, however, forfeited this claim when it failed to challenge Juror No. 122 on this very issue. A "defendant's objection to a juror's competency, first made after trial, is belated and not cognizable on appeal. [Citations.]" (*People v. Hill* (1992) 3 Cal.4th 959, 985, overruled on other grounds in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13.)

During voir dire, several jurors were questioned about their English language proficiency, including Juror No. 122. The defense stipulated to the removal of two potential jurors on the basis of language proficiency. However, neither party, nor the court, discerned a problem with Juror No. 122's ability to understand English. Neither party exercised a peremptory challenge against Juror No. 122 nor challenged him for cause.

Additionally, Smith did not express concern regarding Juror No. 122's

ability to understand English when the court held a hearing on his misconduct. Instead, Smith focused on Juror No. 122's willful violation of the court's order to refrain from consulting outside resources as a basis for removal. At the hearing on whether or not he should be discharged defense counsel stated: "I could understand that he feels . . . that his English--he feels self-conscious about his English, he wants to be able to participate, and so that's maybe what makes him look this up. He wants to be on an equal footing with other jurors so that he can deliberate. I . . . even if that's his motivation, he still is willfully disobeying direct orders from the court about how to deal with this process. He's done it this time. If it's based on misunderstanding or his wanting to be included or participate, deliberate effectively. I don't know that it matters. He's shown that he is not going to be able to follow the rules."

In its ruling denying the defense's motion to remove Juror No. 122, the court noted as follows: "I think it is clear that his confidence in his own ability to master the English language is limited. So, though he's told us he's understood everything during the trial, he does speak with an accent, and while we think he's fine to proceed in this trial and fine to serve as a juror in this case, it sounds like curiosity got the best of him."

Because the grounds for objection to Juror No. 122 based upon English competency were known to Smith during voir dire, he cannot raise it for the first time on appeal. Moreover, Smith's forfeiture of this issue is compounded by his failure to raise Juror No. 122's language proficiency as a basis for removal during the hearing on juror misconduct.

We note Smith's reply brief asserts we should construe Smith's counsel's statements at the hearing on juror misconduct that he did not believe Juror No. 122 was competent to serve on the jury due to his lack of facility with English. While we agree no magic words or incantations are required to preserve an objection, we disagree the objection was preserved on this record. Smith states, "the court clearly understood that

7

counsel wanted the juror who was unable to follow the rules replaced with one who could." We agree. The issue of English language competency is separate and distinct from disobeying court orders. Indeed, the court's remarks that Juror No. 122 "understood everything during the trial" and was "fine to serve as a juror"—to which the defense made no objection—supports our conclusion Smith did not properly preserve this issue for appeal. In any event, the record contains no evidence that Juror No. 122's language skills rose to the level of incompetence. Furthermore, we do not reweigh the trial court's credibility determinations. (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1053.) We defer to the court's firsthand observations and find it did not abuse its discretion finding Juror No. 122 competent to serve as a juror.

B. *Presumption of Prejudice*

Both sides, and the trial court, concede Juror No. 122 engaged in misconduct by searching for dictionary definitions in Spanish. The crux of the issue on appeal, however, is whether the prosecution rebutted the presumption of prejudice raised by this misconduct.

We first determine whether "the extraneous material, judged objectively, is so prejudicial in and of itself that it is inherently and substantially likely to have influenced a juror." (*Nesler*, *supra*, 16 Cal.4th at pp. 578-579.) The extraneous material, online dictionary definitions of "pimping" and "pandering"— was not inherently or substantially likely to have influenced that juror's verdicts on counts 1 and 2. The translation from Spanish for pandering was, "act[ing] as an intermediary [¶]. . . [¶]. . . for a sexual intrigue", and for pimping was "getting [a] customer for [a] prostitute." While these definitions were not identical to the jury instructions, the trial court remarked "they're not that far off." Furthermore, the record demonstrates only Juror No. 122 was exposed to the extraneous material. We determine the material was not "so prejudicial in context that its erroneous introduction in the trial itself would have warranted reversal of the judgment." (*People v. Danks* (2004) 32 Cal.4th 269, 303.)

8

Next, we look to "the nature of the misconduct and the surrounding circumstances" to determine whether "it is substantially likely a juror was 'actually biased' against the defendant." (*Nesler*, *supra*, 16 Cal.4th at pp. 578-579.) After reviewing the record, we conclude it was not substantially likely that Juror No. 122 was actually biased against Smith. This is based upon his statements made when questioned by the trial court regarding the misconduct. Juror No.122 stated he wanted to understand what he was doing in deliberations and that it was "fair" to Smith he have that understanding. We agree with the trial court's interpretation of Juror No. 122's actions, that he simply wanted to participate as fully as possible and undertook an isolated, though misguided, effort to do so. The presumption of prejudice was properly rebutted in this case, and the court did not err when it refused to discharge Juror No. 122.

DISPOSITION

The judgment is affirmed.

O'LEARY, P. J.

WE CONCUR:

SANCHEZ, J.

MARKS, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9